FILED
United States Court of Appeals
Tenth Circuit

June 13, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TYLA M. NEWBOLD,

        Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[*]

        Defendant-Appellee.

No. 12-4078

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:10-CV-00959-PMW)**
_____

Submitted on the briefs:[**]

Richard A. Williams, Deseret Disability Law, Salt Lake City, Utah, for
Plaintiff-Appellant.

David B. Barlow, United States Attorney; John Jay Lee, Of Counsel, Regional Chief
Counsel; David I. Blower, Special Assistant United States Attorney, Social Security

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Administration, Office of the General Counsel, Region VIII, Denver, Colorado, for Defendant-Appellee.

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

**EBEL**, Circuit Judge.

Tyla M. Newbold appeals from a magistrate judge's order affirming the Commissioner's decision to grant social security benefits from October 1, 2006, through November 1, 2007, and to deny benefits thereafter. The Commissioner determined Ms. Newbold had been disabled during this closed period[1] due to physical and mental impairments, but that her disability ceased on November 2, 2007, when she experienced a medical improvement related to her ability to work. The overarching issue on appeal is whether the administrative law judge (ALJ) properly applied the medical-improvement standard in making his disability-cessation decision.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). Hence, our appellate jurisdiction arises under 28 U.S.C. §§ 636(c)(3) and 1291. We affirm.

---

[1]     In a closed-period case, the ALJ "determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of [the ALJ's] decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (internal quotation marks omitted). "Typically," as was the case here, "both the disability decision and the cessation decision . . . are rendered in the same document." *Id.* (internal quotation marks omitted).

# I. BACKGROUND

Ms. Newbold was twenty-eight years old at the time of the Commissioner's final decision.  She has a high school education and worked as a collections agent, customer service specialist, sales agent, and elementary teacher assistant.  In April 2008, she sought disability insurance benefits (DIB) and supplemental security income (SSI) based on "fibromyalgia, chronic fatigue, depression, anxiety[,] and chronic migraines."  Admin. R. at 177.

Benefits were denied initially and on reconsideration.  Ms. Newbold then requested and received a hearing before an ALJ.  In June 2009, the ALJ issued an eighteen-page, single-spaced, partially favorable decision.

The ALJ first applied the familiar five-step sequential evaluation process for determining disability.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing five steps).  At steps one through three, the ALJ found Ms. Newbold had not engaged in substantial gainful activity since October 1, 2006, her alleged onset date; she has had, at all times relevant to the decision, five severe impairments (fibromyalgia, migraine headaches, obesity, depression, and anxiety); and from October 1, 2006, through November 1, 2007, these impairments, singly or in combination, did not meet or medically equal any of the per se disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ next found that from October 1, 2006, through November 1, 2007, Ms. Newbold possessed the residual functional capacity (RFC) to perform a limited range of sedentary, unskilled work,

but would be absent "at least 3 to 4 days per month" due to "excessive recumbency, fatigue, weakness/exhaustion, pain, [and] migraine headaches." Admin. R. at 21. Based on this RFC, the ALJ found at steps four and five that, from October 1, 2006, through November 1, 2007, Ms. Newbold could not perform her past relevant work or other work existing in significant numbers in the national economy. Thus, the ALJ concluded that Ms. Newbold was disabled, as defined in the Social Security Act, from October 1, 2006, through November 1, 2007.

The ALJ then followed the sequential evaluation process for determining whether a claimant's disability continues or ends. *See Shepherd*, 184 F.3d at 1198 (holding medical-improvement standard, created by 42 U.S.C. § 423(f) and defined by 20 C.F.R. § 404.1594(b)(1), applicable to closed-period cases); *see also* 20 C.F.R. §§ 404.1594(f) (setting forth evaluation steps for DIB) and 416.994(b)(5) (setting forth evaluation steps for SSI).[2] The ALJ found Ms. Newbold had not engaged in

---

[2]  The medical-improvement standard for DIB is virtually identical to that for SSI, *compare* 42 U.S.C. § 423(f), *with id.* § 1382c(a)(4), as are the regulations defining the standard, *compare* 20 C.F.R. § 404.1594(b)(1), *with id.* § 416.994(b)(1)(i). Likewise, the steps to be followed in determining whether a claimant's disability continues (or has ceased) are extremely similar. *Compare id.* § 404.1594(f), *with id.* § 416.994(b)(5). For brevity, we will cite to the regulations related to DIB and will omit parallel citations for SSI. *See* Social Security Program Operations Manual System (POMS) DI 28010.015(A)(1)(a), *available at* http://policy.ssa.gov/poms.nsf/lnx/0428010015 (observing that the "wording concerning MI [medical improvement]" in §§ 404.1594 and 416.994 is "slightly different, but the substance and intent is the same").

The ALJ issued his decision on June 16, 2009. On August 24, 2012, amendments to the regulations governing the cessation of benefits, 20 C.F.R.

(continued)

- 4 -

substantial gainful activity since her alleged onset date, and that, beginning on November 2, 2007, she did not have an impairment or combination of impairments that met or medically equaled any of the per se disabling impairments. *See* 20 C.F.R. § 404.1594(f)(1)-(2). As of that date, a "medical improvement," as defined in § 404.1594(b)(1), occurred. *See id.* § 404.1594(f)(3). Ms. Newbold had the RFC to perform a limited range of sedentary, unskilled to semi-skilled work, and she would no longer be absent three to four days per month. *Compare* Admin. R. at 24-25, *with id.* at 21. Her "functional capacity for basic work activities ha[d] increased, primarily because [her] condition . . . [no longer] mandate[d] the need to lay down more than the allowed time during an 8-hour workday." *Id.* at 30. *See* 20 C.F.R. § 404.1594(f)(4). In making this determination, the ALJ found Ms. Newbold's statements, as of November 2, 2007, about "her impairments and their impact on her ability to work . . . not entirely credible." Admin. R. at 28; *see Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (observing that "the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC," and that the "the ALJ's credibility and RFC determinations are [therefore] inherently intertwined"). Taking into consideration the vocational expert's (VE's) testimony, the ALJ next found Ms. Newbold could not perform any of her past relevant work. *See* 20 C.F.R. § 404.1594(f)(7). But given her RFC, and considering her age, education, and past

§§ 404.1594 and 416.994, took effect. We refer to and apply the versions of those regulations "in effect at the time of the ALJ's decision." *Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012).

work experience—and relying on the VE's testimony—the ALJ concluded that beginning on November 2, 2007, Ms. Newbold "has been capable of making a successful adjustment to [other] work that exists in significant numbers in the national economy." Admin. R. at 31. *See* 20 C.F.R. § 404.1594(f)(8). He therefore concluded that Ms. Newbold's disability ended on November 2, 2007.[3]

The Appeals Council denied Ms. Newbold's request for review and a magistrate judge, presiding pursuant to 28 U.S.C. § 636(c)(1), affirmed the Commissioner's decision.

Ms. Newbold appeals, arguing the ALJ erroneously: (1) concluded that she had experienced a medical improvement as of November 2, 2007; (2) rejected her treating rheumatologist's (Dr. McMillan's) opinion that she was disabled after November 1, 2007; (3) evaluated her subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms after November 1, 2007; and (4) failed to include, in his hypothetical to the VE, limitations assessed by Dr. McMillan after November 1, 2007.

---

[3] We note that 20 C.F.R. § 404.1594(f)(5) is inapplicable to this case and that, pursuant to § 404.1594(f)(6), the ALJ found Ms. Newbold's five impairments severe "[a]t all times relevant to [the] decision," Admin. R. at 19.

## II. DISCUSSION

"In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. *See Shepherd,* 184 F.3d at 1199. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). It is "more than a scintilla, but less than a preponderance." *Id.*

When an ALJ grants benefits to a claimant for a closed period, two decision-making processes occur. *See Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) (describing the differences between a "typical disability case" and a closed-period case). First, the ALJ finds the claimant disabled and grants benefits. *See id.* Second, the ALJ engages in the benefits-cessation decision-making process. *Id.* ("[I]n closed period cases, the ALJ . . . decid[es] whether (or, more aptly, when) the payments of benefits should be terminated."). Under the latter process—the subject of Ms. Newbold's appeal—the ALJ must determine "if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [her] ability to work." 20 C.F.R. § 404.1594(a).

The ALJ follows "specific steps in reviewing the question of whether [a claimant's] disability continues." *Id.* § 404.1594(f); *see also Shepherd*, 184 F.3d at 1201 & n.5 (summarizing steps involved in determining whether disability continues or ends). To determine whether a medical improvement has occurred, "the ALJ must . . . compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled." *Shepherd*, 184 F.3d at 1201 & n.5 (citing § 404.1594(b)(7)). Because this is a closed-period case, where no prior decision exists, the claimant's alleged disability onset date is used as the comparison point. POMS DI 28010.105(D)(3), *available at* http://policy.ssa.gov/poms.nsf/lnx/0428010105; *id.* DI 25510.005, *available at* http://policy.ssa.gov/poms.nsf/lnx/0425510005.[4] "If there has been medical improvement as shown by a decrease in medical severity," the adjudicator must then determine "whether it is related to [the claimant's] ability to do work." 20 C.F.R. § 404.1594(f)(3)-(4).

In order to make this determination, "the ALJ must reassess a claimant's residual functional capacity (RFC) . . . . [and] then compare the new RFC with the RFC before the putative medical improvements." *Shepherd*, 184 F.3d at 1201 (citing

---

[4]     In most cessation determinations, the point of comparison for the prior medical evidence is the aforementioned "most recent favorable medical decision," meaning "the latest [final] decision involving a consideration of the medical evidence and the issue of whether [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(7).

- 8 -

§ 404.1594(c)(2)).  Having reassessed the claimant's RFC "based on all current impairments," the ALJ "then considers whether she can still do the work she has done in the past."  *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004) (citing § 404.1594(f)(7)).  "If she is unable to do her past relevant work, . . . the Commissioner considers the RFC and the claimant's age, education, and past work experience to determine whether she can do other work."  *Id.* (citing § 404.1594(f)(8)).  If the claimant can perform either her past relevant work or other work, "'disability will be found to have ended.'"  *Id.* (quoting § 404.1594(f)(8)).[5]

With these principles in mind, we turn to Ms. Newbold's arguments on appeal.

## A.  Medical Improvement

Ms. Newbold first asserts that the ALJ erred in finding a medical improvement based exclusively on a change of symptoms, when, under *Shepherd*, such a finding must be premised on an improvement in the objective medical evidence.  *See* 184 F.3d at 1201.  Although she concedes that she experienced "some symptomatic improvements," Aplt. Br. at 16, she insists that "the regulations do not allow for a change in symptoms alone to establish 'medical' improvement," Amended Aplt.

---

[5]     We note that *Hayden* and *Shepherd* do not discuss the steps set forth in 20 C.F.R. § 404.1594(f)(1)-(2) or (6).  *See Hayden*, 374 F.3d at 988 (summarily observing that § 404.1594(f) contains an "eight-step sequential evaluation process [for] termination-of-benefit reviews"); *Shepherd*, 184 F.3d at 1201 n.5 (noting that "[t]here are additional steps involved in disability reviews" under § 404.1594(f)).  The ALJ in this case, however, touched on each of the applicable steps.  *See supra* at 4-6 & n.3.

Reply Br. at 2. We decline to adopt her reading of *Shepherd* and the applicable regulations.

The issue in *Shepherd* was whether the medical-improvement standard, which "applies when a disability award has become final and the commissioner brings an action to terminate those benefits[,] . . . applies in closed period cases." *Shepherd*, 184 F.3d at 1199. The court in *Shepherd* held that it does. *Id.* at 1198.

In reaching this conclusion, the court noted that

[t]he Social Security Administration's regulations define medical improvement as

"any decrease in the medical severity of [the] impairment(s) . . . . A determination that there has been a decrease in medical severity must be based on changes (improvements) in the symptoms, signs *and/or* laboratory findings associated with [the] impairment(s)."

*Shepherd*, 184 F.3d at 1199 (quoting § 404.1594(b)(1)) (emphasis added).[6] The court then summarized the "medical improvement test," concluding that "[t]he ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence." *Id.* at 1201 (citing § 404.1594(c)(2)). This is the language upon which Ms. Newbold relies.

But she neglects to appreciate that the very regulation relied upon in *Shepherd*, § 404.1594(c)(2), provides for a medical improvement based on either objective or

---

[6]     Signs and laboratory findings are objective medical evidence, *see* 20 C.F.R. § 404.1512(b)(1) & *id.* § 404.1528(b)-(c), while symptoms are subjective—symptoms are a claimant's "own description of [her] physical or mental impairment," *id.* § 404.1528(a).

subjective evidence, as its final sentence employs the disjunctive: "Unless an increase in the current residual functional capacity is based on changes in the signs, symptoms, *or* laboratory findings, any medical improvement that has occurred will not be considered to be related to your ability to do work." 20 C.F.R. § 404.1594(c)(2) (emphasis added). Further, the court in *Shepherd* evaluated the ALJ's medical-improvement finding by considering whether it was "substantiated by changes in signs, symptoms, *or* laboratory findings." 184 F.3d at 1202 (emphasis added). Doing so was consistent with *Glenn v. Shalala*, an earlier Tenth Circuit case applying § 404.1594, where we observed that "medical improvement 'must be based on changes (improvement) in the symptoms, signs, *and/or* laboratory findings associated with your impairment(s),'" *Glenn*, 21 F.3d 983, 986 (10th Cir. 1994) (emphasis added) (quoting 20 C.F.R. § 404.1594(b)(1) (termination-of-benefits case)). Indeed, the Social Security Program Operations Manual System, "which is a set of policies issued by the [Social Security Administration] to be used in processing claims," *Ramey v. Reinertson*, 268 F.3d 955, 964 (10th Cir. 2001) (internal quotation marks omitted), specifically states that "[a]djudicators may occasionally find MI [Medical Improvement] based on changes (improvement) *in symptoms alone*, without associated changes in signs or laboratory findings," POMS DI 28010.015(A)(2) (emphasis added), *available at*

https://secure.ssa.gov/apps10/poms.nsf/lnx/0428010015.

- 11 -

Thus, to the extent *Shepherd* could be read to suggest that a finding of medical improvement may not be based on symptoms alone, we reject that reading. The Commissioner's regulations, *Shepherd's* application of those regulations, preexisting Tenth Circuit case law, and the POMS demonstrate that an ALJ may find medical improvement based on an improvement in signs, laboratory findings, *and/or* symptoms. *See Ramey*, 268 F.3d at 964 n.2 ("[W]e defer to the POMS provisions unless we determine they are arbitrary, capricious, or contrary to law.") (internal quotation marks omitted)).

Here, the ALJ reassessed Ms. Newbold's RFC and compared her new RFC to her earlier RFC. He found her medically improved as of November 2, 2007, because the medical severity of her impairments had decreased, her functional capacity to do basic work activities had increased, and she could, as of that date, engage in substantial gainful activity. The ALJ based this finding on: (1) her March 2009 hearing testimony that her condition improved from 2007 to 2008 and again from 2008 to 2009, *see* Admin. R. at 24; (2) a February 2008 treatment note from her primary care physician, indicating she was "doing very well on her current medication regime," "had lost 40 pounds," and "was more active and . . . even thinking of returning to work," *id.* (citing *id.* at 343 (Ex. 13F at 15)); (3) a June 2008 medical record from Dr. McMillan, documenting a *one-year* gap in treatment, *id.* (citing *id.* at 261 (Ex. 2F at 15)); (4) an August 2008 medical record from Dr. McMillan, noting that Ms. Newbold "was thinking of going to school and getting

a job in the near future," *id.* (citing *id.* at 240 (Ex. 1F at 2)); and (5) a January 29, 2009, medical record from Dr. McMillan, noting Ms. Newbold's "report [that] she was able to take care of herself and perform her activities of daily living," *id.* (citing *id.* at 272 (Ex. 2F at 26)). *See also* 20 C.F.R. § 404.1594(f)(3)-(4) & (b)(1)-(b)(4).

The ALJ also considered documentary evidence from three treating physicians (including Dr. McMillan) and two examining physicians, dated December 2007 to January 2009. This evidence chronicled "conservative treatment for symptoms of fibromyalgia, liver transplant follow-up and depression." Admin. R. at 26. Further, and contrary to Ms. Newbold's argument that the ALJ did not identify any objective evidence demonstrating medical improvement, the ALJ found that

> [a]lthough the[] records reflect diffuse tenderness to palpation upon examinations, all other findings were consistently within <u>normal or, at most, mild limits</u>, including those found during neurological, motor, deep tendon, coordination, sensory and gait and station testing. Also, testing revealed <u>average</u> mental flexibility, mental processing speed, immediate verbal memory and sequencing skills. These records show it was also very common to find that she was in no apparent distress.

*Id.* And, as will be discussed in more detail below, the ALJ found not entirely credible Ms. Newbold's description of the degree of her impairment from November 2, 2007, forward, and he accorded diminished weight to Dr. McMillan's opinion evidence from January 2009.

The ALJ did not err in concluding that Ms. Newbold's disability ended on November 2, 2007, due to medical improvement. His conclusion is supported by substantial evidence in the record and the correct legal standards were applied. As

- 13 -

such, we reject Ms. Newbold's argument that "the ALJ failed to demonstrate that [she] experienced 'medical improvement' sufficient to return to full time employment." Aplt. Br. at 16. This is not a case in which the record evidence overwhelmingly contradicts the ALJ's conclusion, or in which the ALJ neglected to discuss material evidence that favors the claimant. *See, e.g.*, Admin. R. at 30 (considering state agency medical consultants' RFC assessments and dismissing finding that Ms. Newbold could do "light work" (emphasis omitted)). Instead, Ms. Newbold essentially asks this court to reweigh the evidence, "an invitation we must decline." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). *See also Wall*, 561 F.3d at 1069 (where substantial evidence supports the decision, "we may not reweigh the evidence or try the issues de novo in order to advance a different view" (internal quotation marks omitted)); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight[.]").

Given our holding, Ms. Newbold's arguments challenging discrete portions of the ALJ's disability-cessation decision are likewise unavailing. We address why, below.

## B. Treating Physician

Ms. Newbold next contends that the ALJ erroneously "reject[ed]" Dr. McMillan's opinion that she was disabled after November 1, 2007. Aplt. Br. at 19. We disagree.

Where, as here, the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). Treating source medical opinions not entitled to controlling weight "are still entitled to deference" and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). *But see Oldham*, 509 F.3d at 1258 (observing that ALJ is not required to explicitly discuss all of the factors in deciding what weight to give a medical opinion).

Applying the applicable framework, the ALJ did not reject Dr. McMillan's opinion altogether. Instead, he determined that Dr. McMillan's opinion after November 1, 2007, was not controlling, and he ascribed it "diminished weight." Admin. R. at 29. The ALJ then, as he must, gave "good reasons" for the decision "that are sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the treating source's medical opinion[] and the reason for that weight." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted).

The ALJ explained:

Dr. McMillan's statements [after November 1, 2007,] have been carefully considered but are given diminished weight . . . in regards to the claimant's ability, or lack thereof, to perform work-related activities, as they indicate very extreme limitations that are unsupported by other objective evidence of record, as discussed above in the description of medical evidence; are inconsistent with the claimant's activities of daily

- 15 -

> living, as demonstrated in the record; and, most significantly, are inconsistent with his own report dated the same day that claimant is able to take care of herself and perform her activities of daily living.

Admin. R. at 29 (citing *id.* at 272 (Ex. 2F at 26)). In making this finding, the ALJ referenced Dr. McMillan's "fibromyalgia questionnaire," dated January 29, 2009. *See id.* (citing *id.* at 242-48 (Ex. 1F at 4-8)). In the questionnaire, Dr. McMillan opined that Ms. Newbold "has an extremely limited residual functional capacity, she can work no more than two to three hours during an 8-hour workday and she would miss work more than four days per month due to her impairments." *Id.* The ALJ found this assessment to be inconsistent with medical evidence from the relevant time period containing "findings [that] were consistently within <u>normal or, at most, mild limits</u> . . . ." *Id.* at 26. *See Pisciotta*, 500 F.3d at 1078 ("Medical evidence may be discounted if it is . . . inconsistent with other evidence." (internal quotation marks omitted)).

The ALJ also observed that Dr. McMillan's assessed extreme limitations were inconsistent with Ms. Newbold's reported activities of daily living since November 2, 2007; specifically, her reports that

> she has been able to independently . . . car[e] for her own personal needs; do[] household chores, i.e., dishes, vacuuming; cooking; texting friends; using a computer; driving; grocery shopping; reading; watching television; visiting with friends; attending church on a weekly basis; and, attending church activities one night a week.

Admin. R. at 27 (citing *id.* at 321-22 (Ex. 11F at 3-4); *id.* at 326 (Ex. 12F at 2)). *See* 20 C.F.R. § 404.1527(c)(4) (stating ALJ must consider whether opinion is consistent "with the record as a whole"); *id.* § 416.927(c)(4) (same).

And, the ALJ found Dr. McMillan's opinion, reflected in the "fibromyalgia questionnaire," inconsistent with his own report from the same day. In the questionnaire, Dr. McMillan opined that Ms. Newbold could not prepare and eat a simple meal or carry out routine ambulatory activities such as shopping or banking. Admin. R. at 245. But in a separate medical record from the same date, he indicated that Ms. Newbold "is able to take care of herself and perform her activities of daily living." *Id.* at 272.

Although Ms. Newbold, among other things, insists that the ALJ failed to explain how Dr. McMillan's assessed limitations are inconsistent with other evidence of record, the foregoing examples cited by the ALJ adequately explain his reasoning. *See Watkins*, 350 F.3d at 1301 (requiring ALJ to give "specific, legitimate reasons" when discounting a medical opinion (internal quotation marks omitted)). Accordingly, we conclude that substantial evidence supports the ALJ's decision to afford Dr. McMillan's opinion, after November 1, 2007, diminished weight.

**C. Credibility**

Ms. Newbold also challenges the ALJ's evaluation of her subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms after November 1, 2007. She claims that his analysis was improper because he "did

not provide valid reasons for his negative credibility finding." Aplt. Br. at 33. We disagree.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (citation, brackets, and internal quotation marks omitted).

In this case, the ALJ thoroughly discussed Ms. Newbold's allegations of pain and fatigue and concluded that her medically determinable impairments could reasonably be expected to cause her alleged symptoms. But he found her statements, beginning on November 2, 2007, concerning "her impairments and their impact on her ability to work . . . not entirely credible . . . to the extent they [were] inconsistent with the [newly assessed] residual functional capacity assessment." Admin. R. at 27-28.

The ALJ cited a number of grounds, tied to the evidence, for his adverse credibility finding. For example, he found Ms. Newbold's allegations of debilitating fatigue and widespread pain to be inconsistent with her daily activities. *See id.* at 27 (describing activities of daily living). *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (claimant's "description of her daily activities [that] did not indicate significant limitations"—she could "care for herself, her home and her children[,]" and also "drive, shop, and handle finances," garden, visit friends, and go out to eat,

supported ALJ's determination that claimant's "testimony of *disabling* pain was not credible"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) ("[I]n determining the credibility of pain testimony" ALJ may consider "the nature of [claimant's] daily activities").

The ALJ noted that Ms. Newbold's subjective complaints of extreme limitations were inconsistent with objective medical evidence, like that of her primary care physician. The ALJ explained that,

> since November 2007 . . . [Ms. Newbold] has had no persistent neural deficits, she has required no narcotic pain medication for her body aches, she has used only over-the-counter pain medication for her severe migraine headaches, she has experienced no medication side effects, she has required no hospitalizations . . . , she has undergone no physical therapy, she uses no assistive devices to ambulate and she has undergone no mental health treatment.

Admin. R. at 27-28. *See Wilson*, 602 F.3d at 1146 (ALJ's determination that claimant's "testimony of *disabling* pain was not credible" was supported by evidence that claimant "did not take prescription strength pain relief medication"); *Huston*, 838 F.2d at 1132 ("[I]n determining the credibility of pain testimony" ALJ may consider "the levels of medication and their effectiveness").

The ALJ also noted that, on two separate occasions since November 2007, Ms. Newbold had expressed an interest in returning to work and school. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citing claimant's testimony that he was "willing[] to try a job with exertional requirements applicable to sedentary work" as supportive of the ALJ's credibility determination). Moreover, as the ALJ reasonably

pointed out, for fourteen months, from April 2007 until June 2008, Ms. Newbold did not receive treatment from Dr. McMillan, the physician primarily responsible for managing her fibromyalgia. The ALJ found this absence to belie Ms. Newbold's allegations of an extremely limited lifestyle. *See Huston*, 838 F.2d at 1132 ("[I]n determining the credibility of pain testimony" ALJ may consider "frequency of medical contacts" and "the extensiveness of the attempts . . . to obtain relief").

Our review of the record convinces us that substantial evidence supports the ALJ's credibility determination and the correct legal standards were applied. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible.").

## D. Hypothetical to the VE

Finally, we reject Ms. Newbold's contention that the ALJ's hypothetical to the VE should have included limitations assessed after November 1, 2007, by Dr. McMillan. As previously discussed, the ALJ afforded Dr. McMillan's post-November 2007 opinion only diminished weight. And that determination, as discussed above, enjoys substantial evidentiary support. As such, the ALJ's hypothetical adequately reflected the "impairments and limitations that [were] borne out by the evidentiary record." *Decker*, 86 F.3d at 955 (citation omitted); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (stating that the ALJ's hypothetical

questions "must include all (and only) those impairments borne out by the evidentiary record").

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.