**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TONY L. OLSON,

      Plaintiff - Appellant,

v.

NANCY A. BERRYHILL,[*]
Acting Commissioner of Social Security,

      Defendant - Appellee.

No. 15-3231
(D.C. No. 2:14-CV-02474-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **TYMKOVICH**, Chief Judge, **KELLY** and **O'BRIEN**, Circuit Judges.
_____

      Tony L. Olson appeals pro se from a district court order affirming the

Commissioner's denial of disability insurance benefits (DIB) and supplemental security

income (SSI). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g),

we affirm.

---

[*] Under Fed. R. App. P. 43(c)(2), Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Acting Commissioner of the Social Security Administration.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Olson has worked as a truck driver and "a union field organizer/membership solicitor." R., Vol. I at 203. He has a high school education.

In 2010, at the age of 45, he applied for DIB and SSI, claiming disability due to high blood pressure, an enlarged heart valve, a bilateral "[l]ung condition," migraines, and "[v]ision problems." *Id.* at 506. In 2011, Olson added he had fainted and fallen off of a deck, fracturing two cervical vertebrae, but not requiring surgery.

In April 2012, an administrative law judge (ALJ) held a hearing and found Olson not disabled. She relied heavily on the testimony of an independent neurologist, Gerald Winkler, M.D., who opined Olson's neck "situation [wa]s stable," *id.* at 147, and he retained "the strength to carry out normal activities," but he should avoid "expos[ure] . . . to further [neck] trauma," *id.* at 148. The Appeals Council vacated the decision, however, and remanded for consideration of Olson's "cardiac impairments." *Id.* at 212.

On remand, the ALJ obtained testimony from cardiologist David West, M.D.; pulmonologist William Houser, M.D.; Olson; and a vocational expert. Dr. West described Olson's cardiac health as "only minimally compromised." *Id.* at 121. Dr. Houser opined that Olson has "a reduction in breathing capacity" caused by an enlarged heart, *id.* at 129, as well as sleep apnea, but he "doesn't have a pulmonary disease," *id.* at 131. Olson testified he has "consistent[ly] [passed out] over the last [several] years" and must use a wheelchair to prevent falls, *id.* at 87, and he needs a portable oxygen unit "[b]ecause [his] oxygen level gets low," *id.* at 86. He claimed difficulty reading and "seeing anything from center above," *id.* at 99, because of an "eye

2

problem . . . in the back of [his] head," caused by his "broke[n] . . . neck," *id.* at 102.

A vocational expert (VE) testified a hypothetical claimant with Olson's age, education, and work history could perform several jobs in the national economy if limited to semi-skilled and light exertional work and certain other restrictions.

The ALJ again found Olson not disabled. The ALJ identified Olson's severe impairments as a cervical fracture, degenerative disc disease, obesity, bilateral hearing loss, and right ankle degenerative changes/sprain or strain. Despite these impairments, the ALJ found he had a residual functional capacity (RFC) compatible with light work, with restrictions related to reaching; ambulation; exposure to loud noises, extreme temperatures and dangerous machinery; and interactions with others. In doing so, the ALJ relied on the Physical RFC Assessment completed by a state agency consulting physician, Kyle Timmerman, M.D., who noted Olson "had absolutely no neurological sequelae" from his cervical fracture, *id.* at 967, and was being treated conservatively "w/an Aspen collar," *id.* at 964.

The ALJ found the opinions and observations of Olson's own neurologist, Timothy Stepp, M.D., were "not inconsistent" with the above RFC for light work. *Id.* at 61. In particular, the ALJ noted Dr. Stepp had observed Olson exhibit "5/5 motor strength and nonspastic gait" just five months after the fracture. *Id.* The ALJ did not, however, accept Dr. Stepp's conclusion expressed on a "Work Form" a year after the accident that Olson "should be considered permanently disabled." *Id.* at 1265. The ALJ noted Dr. Stepp's conclusion did not "assert any specific functional limitations, and it

3

otherwise [was] conclusory to the ultimate issue of disability, which is a legal decision reserved to the Commissioner." *Id.* at 62.

The ALJ rejected a restrictive RFC because Olson had "present[ed] a false picture of himself" and "undermine[d] his allegations of being disabled." *Id.* at 56. In particular, the ALJ noted Olson had owned and managed a bar for nearly six months after his alleged disability-onset date. Further, the ALJ observed Olson had renewed his commercial driver's license in January 2013, with a motorcycle endorsement and no restrictions. Additionally, the ALJ recounted how an investigator from the Disability Investigation Unit (DIU) had contacted four of Olson's neighbors and they denied ever seeing Olson (1) "being chauffeured by" anyone, *id.* at 1816; or (2) using a wheelchair or oxygen. Consequently, the ALJ concluded Olson's claimed limitations could not be fully accepted in fashioning his RFC unless they were "directly shown and supported by objective medical findings on a 12-month durational basis." *Id.* at 58.

The ALJ then examined the medical records and testimonies from both hearings and concluded while Olson could not perform either of his prior jobs, he could perform other jobs in the national economy as identified by the VE: bench assembler; mail clerk; office helper; document preparer; circuit board assembler; and final assembler. The Appeals Council denied review.

Olson, through a new attorney, then petitioned for review in federal court. The district court affirmed, prompting this pro se appeal.[1]

## DISCUSSION

### I.  Standards of Review

We review de novo the district court's ruling in a social security case and "independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks omitted). Because Olson is proceeding pro se on appeal, we construe his briefs liberally, but we do not serve as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### II.  Treating-Physician Rule

Olson argues the ALJ erred by discounting Dr. Stepp's opinions and relying on Dr. Timmerman's and Dr. Winkle's opinions. We disagree.[2]

---

[1] Olson indicates "[t]his case is about back pay," as he has been awarded benefits going forward based on recent neck and parathyroid surgeries. Reply Br. at 13.

[2] To the extent Olson complains the ALJ failed to take the "advice of . . . all kind [sic] of other treating doctor [sic]," Aplt. Opening Br. at 2, he does not mention how any one of those doctors' opinions bears on his limitations. This court "routinely . . . decline[s] to consider arguments that are . . . inadequately presented[ ] in an appellant's opening brief," *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007), and we do so here as to Olson's unspecified treating physicians.

5

A treating physician's opinion must be given controlling weight if it "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (internal quotation marks omitted). If the ALJ decides, however, that "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

Here, the ALJ rejected Dr. Stepp's opinion only insofar as he opined Olson was disabled and unable to work. Although a treating physician may offer his "judgments about the nature and severity of [the claimant's] impairment(s)," a treating physician may not render opinions that are essentially "administrative findings . . . dispositive of a case," such as whether the claimant is disabled. SSR 96-5p, 1996 WL 374183, at *2. As the ALJ noted, Dr. Stepp's disability opinion was not accompanied by any discussion of the functional limitations caused by Olson's symptoms, diagnoses, or prognoses. This omission was particularly significant given Dr. Stepp's earlier medical opinion that Olson "[was] continuing to progress following his complex cervical spine injury" and "ha[d] completely weaned himself from his cervical collar." R., Vol. I at 1115. We conclude the ALJ did not err in his treatment of Dr. Stepp's opinion concerning disability.

### III. Credibility

Olson argues the ALJ erred by finding his claimed limitations were not fully credible absent corroboration. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by

6

substantial evidence." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (internal quotation marks omitted). In finding Olson not fully credible, the ALJ cited multiple pieces of evidence suggesting Olson had exaggerated his symptoms and the resulting limitations. The ALJ's credibility findings were "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). Thus, the ALJ did not err.

## IV. Waiver

Olson attempts to assert multiple arguments not raised in the district court. For instance, he argues (1) the medical opinions of Dr. Timmerman and Dr. Winkle are not entitled to any weight because the doctors "had malpractice judgement[s]" against them, Aplt. Opening Br. at 2; (2) the ALJ was prejudiced because she tried to indict Olson and his father in 1992 when she was a federal prosecutor; (3) the ALJ "ordered a murder investigation . . . by the Metro Squad," *id.* at 4; (4) the DIU investigation violated his "4th, 5th, 8th and 14th Amendment[ ]" rights, *id.*; (5) the ALJ required an unnecessary eye exam performed by one of her college classmates; and (6) his lawyers provided ineffective assistance "[t]hroughout this case" by "saying the [DIU] investigation could not be put in the case file as it was heresay [sic]," *id.* at 6.

But if a "theory . . . wasn't raised [in] the district court, we usually hold it forfeited." *Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016) (internal quotation marks omitted). While we may consider a forfeited theory "if failing to do so would entrench a plainly erroneous result," the theory's proponent must "argue for plain error and its application on appeal." *Id.* (internal quotation marks omitted). Because Olson has made

no plain-error argument on appeal, the arguments he failed to raise in the district court are waived. *See id.*[3]

**CONCLUSION**

The district court's judgment is affirmed.

Entered for the Court
Per Curiam

---

[3] To the extent Olson argues he received ineffective assistance of counsel in the district court, Olson had no Sixth Amendment right to counsel as a civil litigant. *See Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). Therefore, such a claim is without merit.