**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SUSY K. ADCOCK,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 17-7079
(D.C. No. 6:16-CV-00218-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

    Susy K. Adcock appeals a magistrate judge's order affirming the

Commissioner's denial of disability benefits. She claims an administrative law judge

(ALJ) incorrectly evaluated the medical source evidence, her ability to perform her

past relevant work, and her credibility. Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I

Ms. Adcock alleged she was disabled by depression, stress, mood disorder, drug addiction, alcoholism, sciatic nerve pain, disc deterioration, heart disease, high blood pressure, and anxiety. Before the ALJ, she testified that she lived alone, held an associate's degree, and previously worked several different jobs, including as a bank teller and an assistant librarian. She said her primary disabling impairment was her back condition, followed by depression. She stated she first experienced back pain when she moved the wrong way in the shower. She was prescribed medication and advised to try stretching, but she was not a candidate for surgery. Regarding her depression, she explained that she controlled it for many years until the deaths of her daughter, ex-husband, boyfriend, and brother. As for her functional limitations, Ms. Adcock testified that she could sit for approximately one hour, stand for about thirty minutes, lift and carry ten to fifteen pounds, and walk a couple of blocks. She said she had no problems with understanding information or maintaining attention and concentration. She also testified that her memory was "[n]ot too bad," although she forgot things and made a lot of notes to help. Aplt. App., Vol. 2 at 57.

Ms. Adcock explained that on a typical day, she would get up, have coffee, watch the weather, and then lay back down, sometimes "all day." *Id.* She testified that on other days, she would attend church or AA meetings, go to the doctor, or go to the store. She said she usually went to church twice a week, AA three times a week, and tried to attend all her grandson's basketball games. Ms. Adcock testified that she did not cook for herself and her granddaughter did most of the housework,

2

but she microwaved instant meals, did her own laundry, paid her bills, did the grocery shopping, used the internet, read, fed her two dogs, and volunteered once a week greeting people at her church's food pantry.

Given this and other evidence, the ALJ determined that Ms. Adcock was severely impaired by lumbar disc disease, rheumatoid arthritis, a history of polysubstance abuse, hypertension, anxiety disorder, depressive disorder, fibromyalgia, and small vessel ischemic disease. Despite these severe impairments, however, the ALJ concluded at step four of the five-step disability evaluation process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the process), that Ms. Adcock was not disabled because she retained the residual functional capacity (RFC) to perform a restricted range of light work, including her past jobs as a bank teller and an assistant librarian. Accordingly, the ALJ denied her claim for benefits. Thereafter, the Appeals Council denied review, and a magistrate judge, acting on the consent of the parties, *see* 28 U.S.C. § 636(c)(1), affirmed the denial of benefits. Ms. Adcock now seeks judicial review in this court.

## II

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

3

On appeal, Ms. Adcock contends the ALJ erred in evaluating the medical source evidence, her ability to perform her past relevant work, and her credibility.[1] We consider these contentions in turn.

*A. Medical Source Evidence*

Ms. Adcock first contends the ALJ incorrectly evaluated the medical source evidence, in particular an opinion offered by her treating psychiatrist, Dr. Joe Speer. Dr. Speer completed a one-page mental functional assessment questionnaire that asked him to identify his patient's diagnosis. Dr. Speer wrote, "Bipolar D/O." Aplt. App., Vol. 5 at 822. The form then asked him to identify the signs and symptoms that led to that diagnosis. He wrote that Ms. Adcock was "having frequent mood swings, anger, anxiety, [and] depression. Inability to maintain a meaningful job/work. Difficulty relating to other people." *Id.* Last, the form directed him to describe the current functional limitations related to his patient's mental condition. Dr. Speer wrote:

> Pt. is unable to hold a job, has had several in past few years having been terminated, or quitting due to mood swings. Pt. having bouts of [alcohol] use, placed residentially in treatment 3 mos. ago. Maintains a dysfunctional relationship w/ her immediate family. Decompensations frequent.

*Id.* Although the ALJ discussed this opinion and recognized that Dr. Speer was Ms. Adcock's treating physician, he gave little weight to the assessed functional

---

[1] Throughout her brief, Ms. Adcock alludes to various other poorly developed sub-issues, but "[w]e will consider and discuss only those of her contentions that have been adequately briefed for our review," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

limitations. Ms. Adcock now contends the ALJ "failed to apply the proper legal framework for evaluating" Dr. Speer's opinion. Aplt. Br. at 19. We disagree.

We have frequently described the correct analysis for evaluating a treating physician's opinion:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. And if the ALJ does not assign controlling weight to a treating physician's opinion, it is still entitled to deference and subject to weighing under the relevant factors.

*Mays*, 739 F.3d at 574 (citations, brackets, ellipsis, and internal quotation marks omitted).

> The relevant factors for weighing an opinion are:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (internal quotation marks omitted); *see* 20 C.F.R. § 1527(c)(2) (describing factors).

Initially, we clarify that the ALJ did not reject or discount Dr. Speer's entire opinion. He credited Dr. Speer's assessment of the signs and symptoms underlying the diagnosis of bipolar disorder, and, citing Dr. Speer's opinion, found that she had moderate difficulties with social functioning due to "frequent mood swings, anger,

5

anxiety, and depression," Aplt. App., Vol. 2 at 24, 27. Moreover, the ALJ accepted Dr. Speer's opinion that Ms. Adcock suffered from alcoholism and substance abuse issues, which is indeed reflected in the record. It was only the functional limitations—apparently Dr. Speer's belief that Ms. Adcock could not hold a job and had frequent decompensations—that the ALJ afforded little weight. *See id.* at 29 ("Little weight is given to the opinion of Dr. Joe Speer, M.D.[,] *regarding the claimant's functional limitations.*" (emphasis added)). The ALJ explained that this aspect of Dr. Speer's opinion was "inconsistent with the medical evidence of record and the claimant's activities of daily living and contradicts the other medical opinion evidence." *Id.* We perceive no error.

To the extent Dr. Speer meant to suggest that Ms. Adcock could not maintain employment, his opinion was not a medical opinion. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from [physicians] that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). To the extent Dr. Speer intended to offer a medical opinion regarding Ms. Adcock's functional limitations, there is evidence—including notes from Dr. Speer—that indicates her medications were helpful; she was oriented; she exhibited no signs of psychosis or mania; her behavior, speech, and affect were appropriate or unremarkable; and she was cooperative. *See, e.g.*, Aplt. App., Vol. 5 at 823-25. Other notes from Dr. Isabel Vega indicate that she had insight and good judgment, normal mood and affect, was active and alert, oriented to time, place, and

6

person, and had normal recent and remote memory. *See, e.g., id.*, Vol. 6 at 952. The ALJ also observed that there was no evidence of repeated episodes of decompensation lasting for extended duration.[2]

Further, the ALJ cited Ms. Adcock's fairly extensive daily activities to support his determination. He observed that she regularly attended church and AA meetings several times a week, drove (albeit with pain) five times a week, went to the store and to the doctor, fed her pets, did laundry, and attended her grandson's basketball games. He also noted that she regularly used the computer and paid her bills.

Additionally, the ALJ cited the medical opinions of state agency consultative physicians Dr. Diane Hyde and Dr. Ron Cummings. Dr. Hyde completed a psychiatric review technique form that provided a lengthy and detailed evaluation of Ms. Adcock's mental condition. Dr. Hyde indicated that Ms. Adcock's primary mental impairment appeared to be alcohol abuse, she responded well to medication and therapy, and after successfully completing a residential treatment program, she had a euthymic mood, appropriate affect, and intact mental and thought processes. Dr. Hyde acknowledged that Ms. Adcock had memory and concentration problems, but she noted that Ms. Adcock's daily activities reflected "a broad range of mental functionality" and that the objective evidence did not fully support her allegations of debilitating symptoms. *Id.*, Vol. 2 at 77. Dr. Cummings provided an equally detailed

---

[2] The consultative physicians determined there were one or two episodes of decompensation, but the ALJ gave this aspect of their opinions only some weight due to the absence of any objective medical evidence in the record.

assessment and arrived at the same conclusions. Given this evidence, the ALJ was justified in declining to give controlling weight to Dr. Speer's opinion.

Doing so, however, compelled the ALJ to consider the relevant factors in weighing Dr. Speer's opinion. *See Mays*, 739 F.3d at 576 (holding that only the relevant factors must be applied). On this score, the ALJ recognized Dr. Speer was a treating psychiatrist who had a lengthy treatment history with Ms. Adcock, but he also realized the extent to which Dr. Speer's opinion was inconsistent with the evidence. We conclude the ALJ properly evaluated the medical source evidence.

### B.   *Step Four Analysis*

Ms. Adcock next contends the ALJ incorrectly evaluated her ability to perform her past relevant work at step four. She contends the ALJ did not make the necessary findings to support his conclusion that she could meet the demands of her past work. Instead, she says the ALJ simply relied on the testimony of a vocational expert (VE).

This argument is premised on *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), which explained the three phases of step four. In phase one, the ALJ must evaluate the claimant's RFC; in phase two, "he must determine the physical and mental demands of the claimant's past relevant work"; and in phase three, he must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* at 1023. The ALJ must make specific findings at each phase. *Id.*

The ALJ determined at phase one that Ms. Adcock had the RFC to perform a limited range of light work. Specifically, he found she had moderate difficulties with

8

social functioning that allowed her to have "frequent interactions with supervisors, coworkers, and the public." Aplt. App., Vol. 2 at 25. At phase two, the ALJ was required to make findings regarding the demands of Ms. Adcock's past work. Citing the VE's testimony, the ALJ wrote that Ms. Adcock had previously worked

> as a bank teller (Dictionary of Occupational Titles (DOT)[)] #211.362-018, light as generally performed, medium as actually performed, Specific Vocational Preparation level (SVP) 5. [The VE] also testified that the claimant has worked as an assistant librarian (DOT #100.367-018[)], light as generally performed, light as actually performed, [SVP] level . . . 5.

*Id.* at 30 (citations omitted). Last, at phase three, the ALJ was required to determine whether Ms. Adcock could satisfy the demands of her past relevant work given the findings at phases one and two. The ALJ wrote:

> [T]he [VE] testified that if an individual had the claimant's [RFC], such an individual could perform the claimant's past relevant work as a bank teller or an assistant librarian at the exertional level these positions are generally performed. Therefore, the undersigned finds that the claimant could perform her past relevant work as a bank teller as generally performed and as an assistant librarian as generally and actually performed.
>
> Pursuant to [Social Security Ruling] 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

*Id.* (citation omitted).

Ms. Adcock contends that substantial evidence does not support the ALJ's conclusion that she could perform her past relevant work. She does not cite any specific evidence indicating she was unable to perform her past relevant work, but instead, she faults the ALJ for failing to make the requisite findings at each phase.

9

This argument is meritless. The ALJ found at phase one that Ms. Adcock's moderate limitations allowed her to have frequent interactions with supervisors, coworkers, and the public. At phase two, the ALJ cited with approval the VE's testimony concerning the demands of her past work. And at phase three, the ALJ relied on the VE's testimony to conclude that Ms. Adcock could satisfy the demands of her past relevant work with her RFC. We recognize that *Winfrey* cautioned against allowing the ALJ to make the necessary findings at phase one and delegating the remaining step-four findings to the VE. As *Winfrey* explained, "[w]hen . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." 92 F.3d at 1025. But here, the ALJ expressly told the VE that the claimant was limited to frequent interactions with supervisors, coworkers, and the public, and the VE responded that such a claimant could perform Ms. Adcock's past jobs as a bank teller and an assistant librarian. The ALJ then cited the VE's testimony with approval in the latter phases to support his own findings. The ALJ also confirmed that "the [VE's] testimony [was] consistent with the information contained in the Dictionary of Occupational Titles." Aplt. App., Vol. 2 at 30. Under these circumstances, the ALJ adequately discharged his step four responsibilities. *See Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003) (holding that ALJ did not improperly delegate his step four duties to the VE where "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis").

10

## C. Credibility

Finally, Ms. Adcock contends the ALJ improperly discounted her credibility.[3] The ALJ found her "allegations about her impairments and their limitations on her activities of daily living are generally overstated and out of proportion with the medical evidence of record." Aplt. App., Vol. 2 at 26. Ms. Adcock contends the ALJ's adverse credibility finding disproportionately relied on her level of daily activities, without fully accounting for other corroborating evidence in the record. We disagree.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold*, 718 F.3d at 1267 (internal quotation marks omitted).

Here, the ALJ appropriately considered Ms. Adcock's "numerous" daily activities, Aplt. App., Vol. 2 at 28, when evaluating her credibility. *See Newbold*, 718 F.3d at 1267 (recognizing that ALJ may support his adverse credibility finding with evidence of daily activities that are inconsistent with allegations of "debilitating fatigue and widespread pain"). Ms. Adcock testified that, on a scale of one to ten, her pain ranged in intensity from three to ten, which made it difficult to stand or sit for long periods of time. She also indicated that her pain was "extremely"

---

[3] The Commissioner no longer uses the term "credibility" in its sub-regulatory policy. *See* Social Security Ruling 16-3P, 2016 WL 1119029, at *1 (Mar. 16, 2016).

aggravated by driving, Aplt. App., Vol. 2 at 53, and that sometimes she had to lay down all day.  But as ALJ noted, she testified that she regularly attended church, AA, and other activities, frequently drove, and even drove one hour to her administrative hearing before the ALJ.  Of course, "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser*, 638 F.3d at 1333 (internal quotation marks omitted); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in substantial gainful activity, but such activities may be considered by the [Commissioner], along with medical testimony." (internal quotation marks omitted)).  Nonetheless, the ALJ was entitled to consider Ms. Adcock's regular and fairly extensive activities when evaluating her credibility.

To the extent Ms. Adcock contends the ALJ considered her daily activities to the exclusion of other objective evidence, her argument is belied by the record.  For example, Ms. Adcock faults the ALJ for failing to discuss specific, individual findings from a May 6, 2013 MRI, but the ALJ expressly discussed this evidence and acknowledged it revealed "severe degenerative disc disease at L5-S[1], moderate degenerative disc disease at L4-5, and mild degenerative disc disease at L2-3 and L3-4." Aplt. App., Vol. 2 at 26; *see also id.*, Vol. 5 at 918 (MRI report).  "The ALJ is not required to discuss every piece of evidence." *Wall*, 561 F.3d at 1067 (internal quotation marks omitted).  Ms. Adcock's argument is an invitation for us to reweigh

12

the evidence underlying the ALJ's credibility finding. It is not our role to reweigh

the evidence, however, and we decline to do so. *See Newbold*, 718 F.3d at 1262.

III

The judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh<br>Circuit Judge