**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PAMELA SUE PRAYTOR,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-5028
(D.C. No. 4:17-CV-00118-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

Pamela Sue Praytor appeals a district court order affirming the

Commissioner's denial of disability benefits. She contends an administrative law

judge (ALJ) incorrectly evaluated her treating physician's opinion and her credibility.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse

and remand for further proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I

Ms. Praytor claims she was disabled by degenerative disc disease with severe back pain and arthritis in her right foot. She initially alleged she was disabled on May 12, 2014, the same day she was laid off from work, but she amended her alleged onset date to November 1, 2014, to reflect the termination of her receipt of unemployment benefits. At a hearing before an ALJ, she testified that she was 51 years old and held an associate's degree in nursing. She had previously worked as a medical case manager but was laid off for financial reasons, though she believed she was terminated because she was often absent from work due to illness.

Ms. Praytor testified that her back pain sometimes prevented her from getting out of bed, and although she had been using medication, including Duragesic patches (fentanyl), her medication made her drowsy and did not fully alleviate her pain. She stated that she experienced severe pain when standing and could only stand for five to ten minutes. She indicated that she could sit for ten to fifteen minutes before needing to reposition herself, and she spent approximately 90% to 95% of her day reclining or laying down. Ms. Praytor testified that she primarily prepared ready-made meals and did "a lot of baking." Aplt. App., Vol. 2 at 44. She used an electric shopping cart to buy groceries, limited her shopping to thirty minutes, no longer attended social events, and had difficulty bathing and dressing, all due to pain. She said her pain was alleviated by medication and laying down, but she could not "sleep worth a darn anymore." *Id.* at 47. She testified she slept four or five hours a night and often took two or three naps a day, each lasting "a couple hours." *Id.* at 48.

2

During the relevant time period, Ms. Praytor was treated by Dr. Terry Horton. On May 23, 2014, Dr. Horton completed a one-page assessment of her residual functional capacity (RFC). He indicated that she could sit, stand, and walk less than two hours in an eight-hour work day and could frequently lift and carry ten pounds. He noted her obesity exacerbated her physical condition and that she needed to rest due to pain. When asked for medical findings to support his assessment, Dr. Horton wrote: "Severe Degenerative Disc Disease of Lumbar Spine[,] Lots of pain & Restricted Motion." *Id.*, Vol. 3 at 241. He added, "She is unable to sit more than 15 minutes without having to get up/Reposition. Cannot stand more than 5 minutes without increase in pain in back." *Id.* Two years later, Dr. Horton completed an identical form assessing the same limits supported by similar findings: "Severe Degenerative Disc Disease All Lumbar Spine[;] Pain Major Issue & Restricted Motion[.] Seeing pain doctor & on meds & having procedure[.]" *Id.* at 428.

Given this and other evidence, the ALJ determined at step four of the disability evaluation process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the process), that Ms. Praytor was not disabled. The ALJ found Dr. Horton's opinion "unreasonably restrictive" and Ms. Praytor's allegations of severe pain "not fully credible." Aplt. App., Vol. 2 at 26-27. He therefore concluded that although Ms. Praytor was severely impaired by degenerative disc disease, obesity, and a history of right foot pain, she retained the RFC to perform sedentary work, including her past job as a medical case manager. Thereafter, the Appeals

3

Council denied review, and a magistrate judge, acting on the consent of the parties, *see* 28 U.S.C. § 636(c)(1), affirmed the denial of benefits. This appeal followed.

II

We review the ALJ's decision to ensure that the factual findings are supported by substantial evidence and that the ALJ applied the correct legal standards. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### A. Treating Physician's Opinion

Ms. Praytor first contends that the ALJ incorrectly evaluated Dr. Horton's opinion. It is well-established that "[w]hen analyzing a treating physician's opinion, an ALJ first considers whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman*, 813 F.3d at 1331 (internal quotation marks omitted). "If the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (brackets and internal quotation marks omitted). The opinion is still entitled to deference, however, and thus the ALJ must weigh the opinion using the relevant factors listed at 20 C.F.R. § 404.1527(c). *Id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (internal quotation marks omitted). In all cases, the ALJ must give "good reasons for the decision that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating source's medical opinion and the reason for that weight." *Newbold*, 718 F.3d at 1265-66 (brackets, ellipsis, and internal quotation marks omitted).

Here, there were x-rays taken the same day Dr. Horton issued his opinion, confirming Ms. Praytor had "severe multilevel degenerative disc disease from L2 through L5," Aplt. App., Vol. 3 at 250. The x-ray report indicated "marked disc space narrowing with ostephyte formation and endplate sclerosis." *Id.* It also indicated that "[a]symmetric disc space loss results in sigmoidal degenerative spinal curvature," and there was "lower lumbar facet arthrosis, as well." *Id.* Apart from these x-rays, the record contains numerous treatment notes from Dr. Horton dating back to 2012, reflecting a lengthy treatment history for diagnosed chronic low back pain via pain medications, including narcotics, and steroid injections. *See, e.g., id.* at 259 (office note dated October 12, 2012, indicating low back pain radiating to the left calf, with symptoms "relieved by [Cy]mbalta, Dicyclo and Lor[]tab," and "[p]revious steroid injections"). Additionally, Ms. Praytor was being treated by a pain specialist, Dr. Jeffrey Halsell, and she underwent at least two epidural spinal injections in June 2015, *see id.* at 384-87.

5

Notwithstanding this evidence, the ALJ found that Dr. Horton's opinion was "unreasonably restrictive given the whole of the evidence and appear[ed] to have been too heavily based upon [Ms. Praytor's] subjective complaints at the time the statement was generated." *Id.*, Vol. 2 at 26-27. Although the ALJ recognized Dr. Horton was a treating physician, his evidentiary concern was driven by five other medical source opinions that, according to the ALJ, did "not support [Dr. Horton's] severe limitations." *Id.* at 27. First, the ALJ observed that Dr. Halsell examined Ms. Praytor on November 3, 2014, and "found she had a normal gait, was able to walk on [her] toes and heels, and displayed gross sensation to light touch in her lower extremities." *Id.*; *see also id.*, Vol. 3 at 356 (Dr. Halsell's examination note).

Second, the ALJ cited a consultative exam performed by Dr. David Wiegman, who noted that Ms. Praytor reported her low back had been bothering her for some thirty years and was worsening. She also reported to Dr. Wiegman that she could not stand for more than approximately five minutes, walk more than 100 yards, or lift heavy weight. Dr. Wiegman found she had no edema and both normal strength and normal range of motion in her legs, but her back extension was restricted by fifteen degrees and she had pain with movement. He detected no joint swelling, erythema, effusion, or deformities, but he concluded that Ms. Praytor was unable to walk on her toes and heels due to foot pain, while her gait was normal, symmetric, and steady.

Third, the ALJ cited a note from Dr. Lisa Mogelnicki, Ms. Praytor's podiatrist. Dr. Mogelnicki reported that after receiving a steroid injection, Ms. Praytor experienced "complete relief of pain to [her] right foot." *Id.*, Vol. 3 at 409.

6

The last two opinions were reports of agency physicians, Dr. Luther Woodcock and Dr. Matheen Khan, both of whom concluded that Ms. Praytor could sit up to six hours and stand or walk up to two hours in an eight-hour day. They acknowledged Dr. Horton's more restrictive assessment but observed that Ms. Praytor could accommodate her need to alternate between sitting and standing with normal breaks and a lunch period. Based on these records, the ALJ discounted Dr. Horton's opinion.

The problem with the ALJ's rationale, however, is that none of the evidence he relied upon is probative of Ms. Praytor's pain, which was the basis for Dr. Horton's opinion. Dr. Horton found that Ms. Praytor's back pain prevented her from sitting, standing, or walking for two hours, that she could not sit for longer than fifteen minutes without having to reposition, and that she could not stand longer than five minutes without exacerbating her back pain. The evidence cited by the ALJ relates largely to her functional abilities divorced from her pain: her gait, her limited ability to heel/toe walk, the strength of her lower extremities, her sensory function, the absence of swelling and deformities, and the relief of her foot pain. Although the ALJ referred to some evidence of her pain, recognizing that she reported having it for thirty years, it was worsening, and she experienced it with movement, this evidence corroborated Dr. Horton's opinion. Yet the ALJ relied on these findings and the other nonprobative evidence to discount Dr. Horton's opinion, which was otherwise supported by objective diagnostic evidence. Given this apparent disconnect and the ALJ's failure to explain how this evidence undermines Dr. Horton's opinion, it is not

7

at all apparent how the evidence cited by the ALJ does *not* support Dr. Horton's opinion. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (remanding because the ALJ failed to explain or identify the "claimed inconsistencies" between treating physician's opinion and substantial evidence).

The Commissioner contends that *Langley* is distinguishable because the ALJ in that case found the doctor's opinion was "'an act of courtesy to the patient.'" Aplee. Br. at 24 (quoting *Langley*, 373 F.3d at 1121). While the Commissioner is correct that the ALJ made no such finding here, the Commissioner ignores that here, as in *Langley*, there is evidence supporting the treating physician's opinion, including x-rays, treatment notes, and diagnosed chronic pain with lumbar radiculopathy. *See Langley*, 373 F.3d at 1121 (citing treatment records that supported treating source's assessed limitations, including diagnosis of osteoarthritis and migraine headaches). The Commissioner similarly ignores that here, as in *Langley*, there are "no obvious inconsistencies . . . between [the treating physician's] opinion and either his treatment notes or the other evidence in the record relating to claimant's [condition]." *Id.* at 1122. Given these similar circumstances and the ALJs' failure to explain the purported inconsistencies, it follows that here, as in *Langley*, the ALJ's "reasons for rejecting that opinion are not sufficiently specific to enable this court to meaningfully review his findings," *id.* at 1123 (internal quotation marks omitted).

The ALJ also discounted Dr. Horton's opinion because it "appear[ed] to have been too heavily based upon [Ms. Praytor's] subjective complaints at the time the statement was generated." Aplt. App., Vol. 2 at 27. We have held that an ALJ may

discount a medical source opinion based on "highly unreliable" statements made to physicians. *Oldham v. Astrue*, 509 F.3d 1254, 1259 (10th Cir. 2007) (internal quotation marks omitted). But we have also held that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *Langley*, 373 F.3d at 1121 (internal quotation marks omitted). Because the propriety of the ALJ's rationale turns on whether he properly discredited the severity of Ms. Praytor's subjective complaints of pain or merely speculated that Dr. Horton was deferring to Ms. Praytor's complaints, we next consider the ALJ's evaluation of Ms. Praytor's credibility.

*B. Credibility*

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold*, 718 F.3d at 1267 (internal quotation marks omitted). When evaluating a claimant's subjective complaints of pain, the ALJ must determine:

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

9

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal quotation marks omitted).

The first two elements are not at issue because x-rays confirmed Ms. Praytor's degenerative disc disease, which is linked to her allegations of pain. Thus, in evaluating the third element, the "ALJ was required to consider her assertions of severe pain and to decide whether he believed them." *Id.* at 1489 (brackets and internal quotation marks omitted). The relevant factors to consider include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (internal quotation marks omitted).

Here, the ALJ discredited Ms. Praytor because she did not undergo some type of more aggressive treatment:

> The claimant is found to be not fully credible because . . . she has not obtained the level of treatment one would expect to see if the impairment were as limiting as alleged. The lack of more aggressive treatment or surgical intervention or even a referral to a specialist suggests the claimant's symptoms and limitations were not as severe as she alleged.

Aplt. App., Vol. 2 at 27. Based on this explanation, the ALJ found that Ms. Praytor's credibility was diminished because her allegations were "greater than expected in light of the objective evidence of record." *Id.*

The ALJ's primary rationale for his adverse credibility finding—that Ms. Praytor did not undergo more aggressive treatment or surgical intervention—is invalid because there is no evidence that more aggressive treatment or surgical intervention was prescribed by her doctors. In *Hamlin v. Barnhart*, an ALJ similarly discredited a claimant's complaints of pain because the claimant "did not require an assistive device for his neck." 365 F.3d 1208, 1221 (10th Cir. 2004) (internal quotation marks omitted). Recognizing "[t]here [was] no evidence that any physician recommended such a device or suggested that one would have provided any pain relief," we held that "[a]n ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors." *Id.* The same holds true here. There is no evidence that Ms. Praytor was prescribed surgery or some kind of more aggressive treatment. And to the extent the ALJ faulted her for not seeing a specialist, the ALJ's finding is contradicted by the record, which demonstrates she was treated by Dr. Halsell, who is a *pain specialist*.

Moreover, the record is replete with notes reflecting Ms. Praytor's consistent reports of pain and extensive efforts to find relief. And rather than prescribe surgery, her doctors' approach was pain management via numerous powerful prescription pain medications, including Cymbalta, Lortab, Voltaren, fentanyl, Norco, Gabapentin, MS Contin (morphine), Oxycodone, Percocet, and Embeda. *See, e.g.*, Aplt. App., Vol. 3 at 259, 261, 264, 267-68, 344, 356-57, 369, 381, 383. Ms. Praytor's doctors prescribed these and other medications in conjunction with one another at various times and with fluctuating effectiveness both before and after her amended onset

11

date, yet the ALJ only briefly mentioned that her "mild pain" symptoms "were relieved by Cymbalta, Dicyclomine and Lortab," *id.*, Vol. 2 at 26, 28. Although the ALJ noted the side-effects of her medications in general, he wholly failed to discuss the other medications, their effectiveness, or the frequency of Ms. Praytor's medical contacts. The ALJ also failed to discuss her lumbar epidural steroid injections, which, coupled with the other substantial evidence, corroborates Ms. Praytor's allegations of severe pain. *See Hardman v. Barnhart*, 362 F.3d 676, 679-80 (10th Cir. 2004) (holding that ALJ's boilerplate adverse credibility finding failed to explain the claimant's regular reports of pain and numerous prescription pain medications, which supported claimant's allegations of severe pain); *Hamlin*, 365 F.3d at 1221-22 (holding that ALJ improperly discredited claimant's allegations of pain where his "medical records [we]re replete with his reports of pain and of prescriptions and refills for medication").[1]

Finally, the ALJ offered an additional reason for discounting Ms. Praytor's credibility: her receipt of unemployment benefits during the time she initially claimed to be disabled. Under Oklahoma law, an individual's eligibility for unemployment benefits is conditioned on her ability to work. *See* Okla. Stat. tit. 40,

---

[1] The Commissioner contends *Hardman* is inapplicable because unlike the ALJ in that case, the ALJ here did not rely solely on boilerplate language to discredit the claimant. *See Hardman*, 362 F.3d at 679. *Hardman* applies here, however, because just as in that case, we are unable to reconcile the ALJ's adverse credibility finding with substantial evidence supporting Ms. Praytor's allegations of pain, including her consistent reports of pain to her doctors, her regular efforts to obtain treatment, and her extensive regimen of prescription pain medications.

§ 2-205.1 (stating that an "individual must be able to perform work duties in keeping with [her] education, training and experience" to be eligible for unemployment benefits). We recognize the "obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits." *Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (unpublished).[2] This was a proper factor in assessing Ms. Praytor's credibility, though we note that she amended her alleged onset date to reflect the termination of her receipt of unemployment benefits. At the hearing before the ALJ on October 23, 2015, her attorney explained that she was amending her initial alleged onset date of May 23, 2014 to November 1, 2014 "because [she] did receive some unemployment benefits after she was no longer employed, and [the] November 1st da[te] would reflect after those benefits ceased." Aplt. App., Vol. 2 at 27. Assuming without deciding that these circumstances warrant discounting Ms. Praytor's credibility, this was not the sole basis for discrediting her allegations of pain, which are corroborated by substantial evidence in the record. Because the ALJ did not consider all of the pain evidence, we remand this case to the agency for a proper analysis.

The remaining issue is whether the ALJ was entitled to discount Dr. Horton's opinion because it relied "too heavily" upon Ms. Praytor's subjective complaints of pain. *Id.* We have determined that the ALJ did not properly evaluate Ms. Praytor's

_____

[2] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

13

credibility.  It follows, then, that the ALJ was not entitled to discount Dr. Horton's opinion based on the ALJ's adverse credibility finding.  Accordingly, we remand this case to the agency so it can also properly evaluate Dr. Horton's opinion as well.

III

The judgment of the district court is reversed.  This case is remanded to the district court with instructions to remand to the agency for further proceedings consistent with this Order and Judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge