**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SHIRLEY NIELSEN,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 21-4136
(D.C. No. 2:20-CV-00666-JCB)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Shirley Nielsen appeals the district court's judgment affirming the

Commissioner's denial of her application for Supplemental Security Income benefits.

We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and affirm.

## I.  Background

Ms. Nielsen applied for Supplemental Security Income benefits in January

2018, asserting disability due to a heart condition, fibromyalgia, migraines, and

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

anxiety. After her application was denied initially and upon reconsideration, Ms. Nielsen had a hearing before an administrative law judge (ALJ). She told the ALJ she could sit for 20 minutes, stand for 15 minutes, walk one block, and lift 10 pounds. She also said her hands cramp up but she has no problem with buttons or zippers, she spends two or three days per week in her bedroom due to chronic migraines, she does not drive because of anxiety, and she does household chores. She further stated she has no side effects from her medications. As for social activities, Ms. Nielsen said she goes out with her sisters, goes out to dinner, participates in an annual parade, and camps once a year.

In a written decision, the ALJ followed the five-step sequential evaluation process used to review disability claims. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step process). Pertinent here, the ALJ found Ms. Nielsen has two severe impairments—fibromyalgia and migraine headaches—but none of her impairments, alone or in combination, met or medically equaled the severity of one of the impairments listed as disabling in the Commissioner's regulations.[1] The ALJ then found that although Ms. Nielsen's impairments could reasonably be causing her alleged symptoms, her testimony about the intensity, persistence, and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence in the record. After

---

[1] The ALJ found Ms. Nielsen has non-severe hyperlipidemia, hypertension, gastroesophageal reflux disease, hypothyroidism, paroxysmal supraventricular tachycardia, depression, and anxiety.

reviewing the evidence, the ALJ found Ms. Nielsen had the residual functional capacity (RFC) to perform the full range of light work.[2]

Key to the RFC finding—and central to this appeal—is the ALJ's rejection of the opinions of Ms. Nielsen's treating physician, Alisa Knowlton, M.D., that Ms. Nielsen was so limited in her mental and physical functional abilities that she was unable to work at all.[3]  Dr. Knowlton rendered her opinions on check-box RFC forms—one form in January 2018 assessing physical capacity, and two forms in August 2018 assessing physical and mental capacity.  The ALJ found Dr. Knowlton's opinions unpersuasive for multiple reasons:  (1) "Dr. Knowlton provided little support, explanation, or rationale for her opinions"; (2) the opinions "contain[ed] multiple internal inconsistencies"; (3) they were "not supported by her treatment notes"; (4) they "appear[ed] to be based entirely on [Ms. Nielsen's] subjective complaints"; (5) they were "inconsistent with the objective results" of two "consultative examination[s]" showing normal physical and mental abilities except for "mildly impaired memory and concentration"; and (6) they were "inconsistent

---

[2] Light work includes the ability to lift and carry ten pounds frequently and twenty pounds occasionally, and to stand and walk, off and on, for about six hours in an eight-hour workday or sit most of the time with pushing and pulling of arm-hand or leg-foot controls.  *See* 20 C.F.R. § 416.967(b) (explaining the physical requirements for light work); SSR 83-10, 1983 WL 31251, at *5-6 (1983) (same).

[3] We need not recount all of Dr. Knowlton's RFC opinions, but they were inconsistent with light work in many regards, including (at their most restrictive) that Ms. Nielsen could sit, stand, and walk less than 2 hours in an 8-hour workday; could never carry more than 10 pounds; had significant limitations in reaching, handling, and fingering; and would need unscheduled breaks every 30 minutes.

with the persuasive prior administrative medical findings." Aplt. App., Vol. 1 at 49.

The ALJ instead found partly or fully persuasive other medical opinions and prior

administrative medical findings that were consistent with Ms. Nielsen's ability to

perform the full range of light work. Accordingly, at step four, the ALJ found

Ms. Nielsen could return to her past relevant work as a cashier and therefore she was

not disabled.

Ms. Nielsen sought review in the district court, which affirmed the

Commissioner's decision. She appeals.

## II. Standard of Review

"We review the district court's decision de novo and independently determine

whether the ALJ's decision is free from legal error and supported by substantial

evidence." *Fischer-Ross*, 431 F.3d at 731. "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (internal quotation marks

omitted). "[T]he threshold for such evidentiary sufficiency is not high," but it is

"more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(internal quotation marks omitted). We cannot "reweigh the evidence" or "substitute

our judgment for that of the agency." *Barnett*, 231 F.3d at 689 (internal quotation

marks omitted).

## III. Discussion

Ms. Nielsen raises one issue on appeal—whether the ALJ evaluated the

supportability and consistency of the medical opinion evidence in accordance with

4

20 C.F.R. § 416.920c. Under that regulation, which applies to claims like Ms. Nielsen's that were filed on or after March 27, 2017, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." § 416.920c(a). Rather, the ALJ considers the persuasiveness of medical opinions and prior administrative medical findings using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the agency's] disability program's policies and evidentiary requirements," § 416.920c(c)(5).

The most important factors are supportability and consistency. § 416.920c(a). "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion or prior administrative medical findings to the evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." § 416.920c(c)(2). An ALJ must explain how he or she "considered the supportability and consistency factors." § 416.920c(b)(2). An

ALJ must consider factors three through five (relationship with the claimant, specialization, and other factors) but is not required to explicitly discuss them unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *See* § 416.920c(b)(2), (3).

Ms. Nielsen contends the ALJ did not adequately explain how Dr. Knowlton's opinions were unsupported by or inconsistent with the record. She advances multiple arguments, including whether the ALJ erred in evaluating the opinions of other medical sources as part of his inconsistency analysis.

## A.    Supportability

We begin with an internal inconsistency the ALJ noted in one of Dr. Knowlton's RFC forms—that Ms. Nielsen "can sit *at one time*" for 30 minutes but also that she "must . . . walk" every 15 minutes. Aplt. App., Vol. 4 at 79–80. Ms. Nielsen complains this inconsistency merely shows the difference between what she "can do with her conditions, and what she should do with her conditions." Aplt. Opening Br. at 24. We are not persuaded. There is an obvious inconsistency between being able to sit for 30 minutes at a time and a requirement to walk ("must . . . walk") every 15 minutes, and the ALJ properly considered it. If that were the only basis for rejecting Dr. Knowlton's opinions regarding physical RFC, we might agree with Ms. Nielsen that the inconsistency should call into question only the sit/walk findings, rather than undermine the supportability of all of Dr. Knowlton's physical RFC opinions. But it was not the only basis.

6

Ms. Nielsen takes issue with the ALJ's findings that Dr. Knowlton's opinions were "not supported by her treatment notes, which show[ed] no objective evidence of physical or mental abnormalities," and were not supported by the course of treatment, "which showed no evidence of referrals to specialists, orders for laboratory testing or imaging, or more intense treatment regimens beyond conservative medication management." Aplt. App., Vol. 1 at 49. She observes that when a claimant has fibromyalgia and objective medical evidence fails to substantiate the claimant's statements about the resulting functional limitations, Social Security Ruling 12-2P, 2012 WL 3104869 (July 25, 2012) (SSR 12-2P), instructs an ALJ to evaluate the supportability of a medical source's opinion based on the nature of the treatment provided. *See id.* at *5. To that end, she points out that she saw Dr. Knowlton for medication checks every few months from January 2017 through October 2018, and on each visit Dr. Knowlton prescribed three drugs, including a narcotic, for pain management. She also maintains that fibromyalgia is a chronic condition generally treated by medications to limit pain and fatigue and points out that we have noted it is error to require objective evidence of fibromyalgia because it is "a disease that eludes such measurement," *Moore v. Barnhart*, 114 F. App'x 983, 992 (10th Cir. 2004) (internal quotation marks omitted). We disagree with these arguments for multiple reasons.

First, the ALJ did not err in relying on the lack of objective findings. SSR 12-2P directs that objective evidence is relevant to determining whether medically determinable fibromyalgia is disabling: "[B]efore we find that a person with [a medically determinable impairment] of [fibromyalgia] is disabled, we must ensure there is sufficient *objective*

7

*evidence* to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." 2012 WL 3104869, at *2 (emphasis added).[4] Moreover, the portion of SSR 12-2P that Ms. Nielsen relies on directs consideration of "all of the evidence in the case record":

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider *all of the evidence in the case record*, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id.* at *5 (emphasis added); *see also id.* at *6 ("We base our RFC assessment on *all* relevant evidence in the case record." (emphasis added)). "All of the evidence in the case record" necessarily includes, as one factor in the analysis, the objective medical evidence (Dr. Knowlton's treatment notes) that failed to substantiate the claimant's statements about what she can do despite her symptoms. It therefore was proper for the ALJ to note the lack of objective evidence supporting Dr. Knowlton's opinions regarding Ms. Nielsen's functional limitations as one of the reasons for rejecting those opinions.

Second, the ALJ did consider the evidence of Dr. Knowlton's course of treatment in addition to the lack of objective evidence and found that her opinion was "not supported by her course of treatment for the claimant." Aplt. App., Vol. 1 at 49.

---

[4] Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2.

Although Ms. Nielsen cites medications Dr. Knowlton prescribed for pain management, the ALJ could reasonably have concluded the prescription of such medications was insufficient to support the limitations Dr. Knowlton found, particularly given the lack of objective evidence of physical or mental functional limitations.

Third, Ms. Nielsen's argument overlooks Dr. Knowlton's observation that by August 2018, she had gotten Ms. Nielsen's "pain under . . . control," *id.*, Vol. 4 at 142, and that in nearly every treatment note during this period, Dr. Knowlton recorded that Ms. Nielsen either "appear[ed] in no acute distress," *id.* at 65, or "appear[ed] healthy, in no acute distress," *id.* at 67, 69, 70, 72, 102, 104, 136.  Dr. Knowlton also recorded the same observation when she saw Ms. Nielsen to complete the August 2018 RFC forms. *See id.* at 143.  The ALJ discussed this evidence and also considered that despite complaints "of chronic pain, fatigue, and migraines," Ms. Nielsen had "been treated on a stable dosage of medication," including "opiod[s]," *id.*, Vol. 1 at 50.  And nothing in Dr. Knowlton's treatment notes suggests that the course of treatment supports the extreme functional limitations she proposed in the RFC forms.

Fourth, we are not persuaded by Ms. Nielsen's reliance on *Moore* for its statement that an ALJ errs by requiring objective evidence of fibromyalgia because it is "a disease that eludes [objective] measurement," 114 F. App'x at 992 (internal quotation marks omitted).  *Moore* is unpublished and therefore not precedential, and it also predates SSR 12-2P's directive to consider objective evidence.  *Moore* is further distinguishable on its facts because the ALJ there "seemed to require that [fibromyalgia] be *established* by a formalistic clinical or laboratory test."  *Id.* at 990 (emphasis added) (footnote

omitted).  The ALJ here found that Ms. Nielsen has fibromyalgia, and only the resulting

limitations were at issue.  We therefore consider *Moore* unpersuasive with respect to the

facts of this case.

Ms. Nielsen also argues the ALJ erred in rejecting Dr. Knowlton's opinions

because Dr. Knowlton relied on her subjective complaints.  She premises this argument

on the holding of *Arakas v. Commissioner*, 983 F.3d 83, 97 (4th Cir. 2020), that "ALJs

may not rely on objective medical evidence (or the lack thereof)—even as just one of

multiple factors—to discount a claimant's subjective complaints regarding symptoms of

fibromyalgia."  From that premise, Ms. Nielsen contends it was plausible for

Dr. Knowlton to rely on Ms. Nielsen's subjective complaints when opining on her

functional capacity.  But extending *Arakas*'s holding regarding the analysis of a

claimant's subjective complaints to the evaluation of a medical opinion would require us

to ignore the dictate that supportability, which is one of the two most important factors in

evaluating a medical opinion, *see* § 416.920c(b)(2), rests on "the objective medical

evidence and supporting explanations presented by a medical source," § 416.920c(c)(1).

*Cf. Newbold v. Colvin*, 718 F.3d 1257, 1267–68 (10th Cir. 2013) (affirming ALJ's

adverse credibility finding in fibromyalgia case that was based in part on inconsistency

between subjective complaints and objective medical evidence).  It also would require

ignoring SSR 12-2P's tenet (discussed above) that objective evidence is relevant to

evaluating the limiting effects of fibromyalgia.  Moreover, Dr. Knowlton provided no

support for her RFC opinions other than Ms. Nielsen's subjective statements, she

conducted no tests of Ms. Nielsen's functional abilities, and her treatment notes contain no findings regarding such abilities.

Although not directly implicating supportability or consistency, Ms. Nielsen faults the ALJ for not addressing Dr. Knowlton's opinion that she would need to take unscheduled breaks and would likely miss at least four days of work per month.  The ALJ did not expressly discuss this specific limitation, but the reason for the ALJ's rejection of it (that Dr. Knowlton's opinions were unsupported and inconsistent with other record evidence) is evident from his analysis.  No more was required.  *See* § 416.920c(b)(1) ("[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis . . . .  We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017) ("[T]he articulation requirements in [§ 416.920c] will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review our final decision."); *cf. Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (requiring, under predecessor to § 416.920c, that an ALJ need only provide "good reasons" for the weight afforded to a medical opinion).

**B.    Consistency**

We next address Ms. Nielsen's arguments concerning the ALJ's findings that

Dr. Knowlton's were inconsistent with other record evidence.  We begin with the ALJ's

reliance on the inconsistency between the extreme functional limitations in

Dr. Knowlton's opinions and the objective findings of the consulting examiners showing

generally normal physical and mental functioning.  As Ms. Nielsen observes, one of those

examiners, Joseph Fyans, M.D., found she had "tenderness to palpation over the scalp,

through the length of the spine and the posterior trunk diffusely," and "some mild to

moderate spasming of the right lower thoracic/lumbar paraspinal muscles."  Aplt. App.,

Vol. 4 at 93.  But that hardly shows Dr. Knowlton's extreme limitations were consistent

with Dr. Fyans's objective findings, particularly given that Dr. Fyans also found

Ms. Nielsen had normal gait, strength, coordination, range of motion, and reflexes, and

she was "able to perform all higher level ambulatory activities without difficulty,"

*id.* at 94.  And contrary to Ms. Nielsen's argument, Dr. Fyans's finding of diffuse

tenderness does not call into question his qualifications to assess Ms. Nielsen's physical

limitations through objective examination; whether she has fibromyalgia is not in dispute,

only the resulting limitations are contested.[5]  Nor does the absence of Dr. Fyans's

background and certifications from the record or any lack of clarity whether he reviewed

Ms. Nielsen's medical records cast doubt on his ability to conduct an objective

---

[5] To find that a claimant has fibromyalgia, there must be a showing of, among other things, "[a]t least 11 [of 18 specific] positive tender points on physical examination . . . bilaterally . . . and both above and below the waist."  SSR 12-2P, 2012 WL 3104869, at *3.

examination of Ms. Nielsen's functional limitations.  As a state agency consulting

physician, Dr. Fyans was required to "have a good understanding of [Social Security]

disability programs and their evidentiary requirements," 20 C.F.R. § 416.919n, and is

viewed as an "expert[] in the evaluation of medical issues in disability claims under the

[Social Security] Act," SSR 17-2P, 2017 WL 3928306, at *3 (Mar. 27, 2017).[6]  And

Dr. Fyans's report recites Ms. Nielsen's subjective complaints and lists multiple

conditions in the "Past Medical History" section, Aplt. App., Vol. 4 at 91, suggesting he

was familiar with Ms. Nielsen's medical history.

Ms. Nielsen further questions reliance on Dr. Fyans's findings because

fibromyalgia is a "condition causing pain, not loss of range of motion, strength, or ability

to ambulate."  Aplt. Opening Br. at 31.[7]  But the inquiry for disability purposes is

whether pain is "so severe, by itself or in conjunction with other impairments, as to

preclude any substantial gainful employment."  *Brown v. Bowen*, 801 F.2d 361, 362–63

(10th Cir. 1986) (internal quotation marks omitted).  Range of motion, strength, and

ability to ambulate are relevant to that inquiry.

Ms. Nielsen further posits that because fibromyalgia requires consideration of the

patient's "longitudinal record whenever possible," SSR 12-2P, 2012 WL 3104869, at *6,

---

[6] As the Commissioner points out, nothing in the record suggests that Dr. Knowlton was any more qualified to assess fibromyalgia or the resulting limitations than Dr. Fyans.

[7] The ALJ found only partly persuasive Dr. Fyans's opinion that none of his findings would limit Ms. Nielsen's ability to work because it was supported by his examination results but was inconsistent with the prior administrative medical findings that Ms. Nielsen would be limited to the full range of light work.

the ALJ should have considered whether Ms. Nielsen was just having a good day when she saw Dr. Fyans. The longitudinal record, however, consists primarily of Dr. Knowlton's treatment notes generated at Ms. Nielsen's periodic medication-check appointments, and as previously discussed, nothing in those notes calls into doubt the ALJ's reliance on Dr. Fyans's findings and the inconsistency between those findings and Dr. Knowlton's RFC opinions.

Ms. Nielsen also claims that when the other consultative examiner, Michael Schreiner, M.D., noted some errors in Ms. Nielsen's ability to recall numbers, the ALJ misconstrued Dr. Schreiner's findings by stating he found "mildly impaired memory and concentration but otherwise grossly normal results in the mental status examination," Aplt. App., Vol. 1 at 49. We disagree. Dr. Schreiner found Ms. Nielsen's "[r]ecent memory was generally fine"; her "[i]mmediate memory was a mild struggle"; and on "digits backwards, she made errors on three and four digits" and was unable "to do serial three's backwards from 30," so that task "was deemed to be too difficult for her" and "was discontinued." *Id.*, Vol. 4 at 87. Ultimately, Dr. Schreiner "deemed that [Ms. Nielsen] may have some mild struggles with attention and concentration." *Id.* We fail to see how the ALJ's assessment of Dr. Schreiner's findings was wrong. We also fail to see error in the ALJ finding an inconsistency between Dr. Knowlton's opinions that Ms. Nielsen's memory was moderately impaired and her ability to maintain concentration for extended period was extremely impaired, *see id.* at 115, and Dr. Schreiner's objective findings.

Finally, Ms. Nielsen contends the ALJ erred in relying on the opinions of Kendrick Morrison, D.O., and Richard Nielsen, M.D., the nonexamining state agency consultants who completed the medical portion of the initial denial of benefits and the denial upon reconsideration, respectively. The ALJ found persuasive their opinion that Ms. Nielsen would be limited to a full range of light work.

Ms. Nielsen contends the ALJ did not establish whether their opinions were consistent with the record. She observes that Dr. Morrison, relying almost exclusively on Dr. Fyans's report, noted that fibromyalgia was not proven, but he failed to note that Dr. Fyans did not fully assess whether Ms. Nielsen had fibromyalgia despite finding tender points. But again, whether Ms. Nielsen has fibromyalgia is not in question; only the resulting functional limitations are, and Ms. Nielsen fails to show the ALJ erred in relying on Dr. Morrison's evaluation of those limitations.

Ms. Nielsen further notes Dr. Nielsen reviewed Dr. Knowlton's records, which included notations of fatigue and pain, yet upheld the initial denial of benefits despite the fact that pain and other symptoms associated with fibromyalgia "may result in exertional limitations that prevent a person" from performing a full range of work and may also cause "nonexertional physical and mental limitations," SSR 12-2P, 2012 WL 3104869, at *6. But Dr. Knowlton's observations of fatigue and pain were simply a record of what Ms. Nielsen told her; they do not shed light on the extent of Ms. Nielsen's limitations.

Last, Ms. Nielsen argues that because both doctors are ear/nose/throat specialists, their qualifications to opine on fibromyalgia are questionable. However, Ms. Nielsen provides no concrete reason to doubt their qualifications with regard to fibromyalgia, and

15

as state agency consultants, Drs. Morrison and Nielsen were required to "have a good understanding of [Social Security] disability programs and their evidentiary requirements," 20 C.F.R. § 416.919n, and are viewed as "experts in the evaluation of medical issues in disability claims under the [Social Security] Act," SSR 17-2P, 2017 WL 3928306, at *3.[8]

## IV. Conclusion

Our review of the record convinces us that substantial evidence supports the ALJ's disability determination and that the correct legal standards were applied. We therefore affirm the district court's judgment.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

---

[8] In her reply brief, Ms. Nielsen advances a new argument about the ALJ's evaluation of her migraine headaches. *See* Aplt. Reply Br. at 19. We see no reason to overlook our general rule that arguments raised for the first time in a reply brief are waived. *See Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006).